UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| EMI MARIE ELLISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:15-CV-126-TAV-CCS |
| | ) | |
| KNOX COUNTY, TENNESSEE, | ) | |
| KNOX COUNTY BOARD OF EDUCATION, | ) | |
| d/b/a KNOX COUNTY SCHOOLS, and | ) | |
| TIM BERRY, individually and | ) | |
| in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This civil matter is before the Court on the motion to dismiss filed by defendants Knox County, Tennessee, Knox County Schools, and Tim Berry [Doc. 6]. Plaintiff filed a response [Doc. 10]. After careful consideration of the complaint and the relevant law, the Court will grant in part and deny in part the motion to dismiss [Doc. 6]. Specifically, the Court will dismiss the following claims: (1) plaintiff's Tennessee Public Protection Act claim for retaliatory discharge, (2) plaintiff's Tennessee common law claim for retaliatory discharge.

**I.   Background[1]**

In January 2015, defendants hired plaintiff as a science teacher at South-Doyle High School ("South-Doyle") [Doc. 1 ¶ 8]. On plaintiff's first day of employment, a

---

[1] For the purposes of the motion to dismiss, the Court takes plaintiff's factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that "when ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint" (citations omitted)).

student told her that she intended to commit a mass school shooting at South-Doyle [*Id.* ¶ 10]. The student described in graphic detail how she intended to carry out the shooting [*Id.*]. Plaintiff alleges that plaintiff knew that the student was a member of ROTC and the rifle team [*Id.* ¶ 11]. Plaintiff reported the threat to South-Doyle administration [*Id.*]. The administration allegedly undertook an investigation into the threats [*Id.* ¶ 12].

The student described to plaintiff in further detail how she intended to commit the mass shooting at school [*Id.* ¶ 13]. Plaintiff alleges that the student said she would "pull the fire alarm" so her classmates would be "crowded in the hallway and easy targets," that it would be "like shooting fish in a barrel," and she would "shoot [plaintiff] last" [*Id.*]. The student would relay these threats to plaintiff on nearly a daily basis [*Id.* ¶ 16]. Plaintiff then took a week off of work because she was physically and emotionally sick due to the threats [*Id.*]. Upon returning to work, plaintiff asserts that the student renewed her threats [*Id.* ¶ 17].

Tim Berry, principal of South-Doyle, spoke with plaintiff during a conference call to discuss the threats against students and faculty [*Id.* ¶ 19]. At the end of the phone call, plaintiff alleges that she was lead to believe that the administration was handling the issue and she would be returning to work in the near future [*Id.* ¶ 22].

Plaintiff hired counsel on February 2, 2015 [*Id.* ¶ 23]. Plaintiff's counsel sent a letter to Berry advising of his legal representation of plaintiff and requested that no retaliatory action occur while the matter with the student was being sorted out [*Id.* ¶ 24].

2

On or about February 12, 2015, defendants terminated plaintiff claiming that plaintiff had resigned [*Id.* ¶ 25]. Plaintiff contends that defendants' statements are a pretext for retaliation as a result of plaintiff exercising her constitutional and statutory rights, as well as her retention of legal counsel [*Id.*].

Plaintiff filed a complaint to commence this action against Knox County, Tennessee, Knox County Board of Education, and Tim Berry [*Id.* ¶¶ 1–4]. Plaintiff alleges the following claims: (1) a 42 U.S.C. § 1983 claim for retaliatory discharge, (2) a Tennessee Public Protection Act ("TPPA") claim for retaliatory discharge, and (3) a Tennessee common law claim for retaliatory discharge. Defendants filed a motion to dismiss all of plaintiff's claims [Doc. 6].

## II. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," neither will "'naked assertion[s]' devoid of 'further factual enhancement[,]'" nor "an unadorned, the-defendant-unlawfully-harmed-

3

me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

## III. Section 1983 First Amendment Retaliation Claim[2]

Plaintiff asserts a claim under 42 U.S.C. § 1983 that defendants violated plaintiff's First Amendment right to freedom of speech by terminating her employment for speaking on a matter of public concern. In order to prevail on a § 1983 claim, plaintiff is required to prove two elements: (1) she "was deprived of a right secured by the Constitution or

---

[2] Defendants argue that plaintiff cannot maintain a § 1983 claim for retaliatory discharge against a government entity or an employee thereof [Doc. 7 p. 5]. Defendants, however, cite no authority for the premise that state and governmental entities are immune from a § 1983 action based on a violation of the First Amendment of the United States Constitution. While defendants cite authority bolstering the argument that the Tennessee Public Protection Act ("TPPA") supersedes a common law retaliatory discharge cause of action, they cite no authority that the TPPA supersedes a federal action such as one filed under § 1983. The Court, therefore, does not find that governmental entities, or employees thereof, have immunity to a § 1983 action based on the applicability of the TPPA.

4

laws of the United States, and (2) that [she] was subjected or caused to be subjected to this deprivation by a person acting under color of state law." *Gregory v. Shelby Cty., Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000). It is undisputed that defendants acted under color of the laws of the State of Tennessee. Therefore, the Court's inquiry is whether plaintiff was deprived of a right guaranteed to her by the United States Constitution.

To make out a *prima facie* case of First Amendment retaliation, plaintiff must show: (1) that she engaged in speech protected by the First Amendment; (2) that she was subjected to an adverse employment action that would chill a person from continuing to engage in that speech; and (3) causation, i.e., plaintiff's protected speech was a substantial or motivating factor in defendants' decision to take adverse employment action against plaintiff. *Guster v. Hamilton Cty. Dep't of Educ.*, No. 1:02-CV-145, 2004 WL 1854181, at *9 (E.D. Tenn. Mar. 2, 2004) (citations omitted). The Court finds that plaintiff has sufficiently made out a *prima facie* case of First Amendment retaliation.

### A. First Amendment Protected Speech

The first element of the *prima facie* case involves a two-step inquiry. *Id.* First, the Court must determine whether plaintiff's "speech addressed a matter of public concern protected by the First Amendment." *Id.* If it did address a matter of public concern, then the Court must engage in a balancing test to determine whether plaintiff's interest in her speech was outweighed by the governmental interest in promoting the efficiency of public service. *Id.* (citations omitted).

5

### 1. Matter of Public Concern

Whether the speech is a matter of public concern is a question of law for the Court to decide, and plaintiff bears the burden of establishing, as a matter of law, that her speech is constitutionally protected. *Id.* (citations omitted). The Court must consider "the content, form, and context of a given statement." *Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003) (citing *Connick v. Meyers*, 461 U.S. 138, 147–48 (1983)). Matters of public concern include speech that relates to "any matter of political, social, or other concern to the community." *Id.* (internal quotation marks omitted) (citing *Connick*, 461 U.S. at 146).

Plaintiff contends that the safety of schoolchildren and school faculty is a matter of public concern. The Sixth Circuit has found that "[s]peech on matters directly affecting the health and safety of the public is obviously a matter of public concern." *Chappel v. Montgomery Cty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 578 (6th Cir. 1997) (citations omitted); *see also Pacheco v. Waldrop*, No. 5:13-CV-00044-TBR, 2013 WL 2581016, at *8 (W.D. Ky. June 11, 2013) (the court agreed with the plaintiff that "nothing could be more important to the community interests than safety and welfare of its children" and that "it is difficult to imagine a case that is stronger on the issue of public concern"). This Court agrees that a potential attack on a school is a matter of public concern because it affects the safety of schoolchildren and school faculty.

Defendants argue that plaintiff's allegations show only that she spoke as an employee, and not as a citizen intending to speak to an audience wider than that of her employer. However, "speech does not have to be made in a public setting to constitute protected speech." *Rich v. Gobble*, No. 1:08cv35, 2009 WL 801774, at *20 (E.D. Tenn. Mar. 24, 2009) (citations omitted). In *Givhan v. Western Line Consolidated School District*, 439 U.S. 410 (1979), the Supreme Court examined whether speech from a teacher to a principal was constitutionally protected. The Court determined that "[n]either the [First] Amendment itself nor our decisions indicate that [the freedom of speech] is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public." *Id.* at 415. The fact that plaintiff elected to address the alleged threats of violence with internal school administration, therefore, does not remove the speech from protected status.

Defendants also argue that plaintiff was speaking on matters of personal concern, and not on matters of public concern. In support of this argument, defendants cite to portions of the complaint emphasizing plaintiff's personal fear resulting from the alleged threats [Doc. 1 ¶¶ 14–16; Doc. 7 p. 8]. Defendants contend that plaintiff spoke "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest" and thus "a federal court is not the appropriate forum in which to review" a personnel decision [Doc. 7 p. 8–9 (citing *Connick*, 461 U.S. at 138)]. An employee's motivation underlying his speech is a relevant but not necessarily dispositive factor. *Bonnell v. Lorenzo*, 241 F.3d 800, 812 (6th Cir. 2001). Furthermore, "the

7

employee's entire speech does not have to focus on matters of public concern; as long as some portion of the speech does so," it can still qualify as protected speech. *Rodgers*, 344 F.3d at 597. Thus, "mixed speech" is still subject to First Amendment protection. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 894 (6th Cir. 2003).

Plaintiff alleges that she reported to the school's administration a student's threat to commit a mass violent act [Doc. 1 ¶ 12]. This communication, therefore, was not solely a matter of plaintiff's personal concern. Rather, the communication involved a threat to shoot many individuals in the school thereby making it a matter of public concern.

### 2. *Pickering* Balancing Test

Once plaintiff establishes that her speech touched upon an issue of public interest or concern, the Court must balance plaintiff's interest in making her speech against defendants' interest "as an employer, in promoting the efficiency of the public services." *Rodgers*, 344 F.3d at 601. This balancing test is referred to as the *Pickering* test. *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). The *Pickering* prong is also a question of law, with defendant bearing the burden of demonstrating that there were legitimate grounds for the termination. *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 181 (6th Cir. 2008). Relevant factors in the *Pickering* analysis include "the manner, time, and place of the employee's expression, as well as the context in which the dispute arose." *Rodgers*, 344 F.3d at 601.

Defendants contend that there is a substantial public interest in maintaining the confidentiality of matters related to student discipline and that interest outweighs the interest related to the security of the school. In support, defendants cite to Tenn. Code Ann. § 10-7-504(a)(4) and the Federal Education Rights and Privacy Act, 20 U.S.C. § 1232(g), both which prohibit the publication or dissemination of student educational records, which include disciplinary records. However, as plaintiff points out, Tenn. Code Ann. § 10-7-504(a)(4) provides for an exception to the rule "in cases where the safety of persons or property is involved." A threat regarding a mass shooting would, therefore, not have the confidentiality protection, and also noteworthy is the fact that plaintiff did not break confidentiality. She reported the threats to administrators within the school system, and as such, her speech did not even interfere with the purported government interest as defendants suggest.

Furthermore, the Sixth Circuit has found that public safety is at the "zenith of public concern." *Chappel*, 131 F.3d at 578 (internal quotation marks omitted). The Court finds, therefore, that defendants have not met their burden with regard to the *Pickering* analysis.

### B. Adverse Employment Action

Plaintiff must also allege that she was subjected to an adverse employment action that would chill a person from continuing to engage in the protected speech. *Guster*, 2004 WL 1854181, at *9. The Sixth Circuit has noted that examples of adverse action include "discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to

9

promote." *Thaddeius-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) (citations omitted); *see also Doherty v. City of Maryville*, No. 3:07-cv-157, 2009 WL 311118, at *10 (E.D. Tenn. Feb. 6, 2009) (applying the same examples of adverse action to a § 1983 freedom of speech claim), *rev'd on other grounds*, 431 F. App'x 381 (6th Cir. 2011). Plaintiff alleges that she was discharged, which would therefore qualify as an adverse employment action.

This Court has found that threats of termination would likely chill a person of ordinary firmness from continuing to engage in protected speech. *Doherty*, 2009 WL 311118, at *10. It follows that actual termination would have the same effect. Furthermore, defendants have not challenged this element of the *prima facie* claim. The Court finds, therefore, that plaintiff has sufficiently pled this element.

### C. Causation

The final element of the plaintiff's *prima facie* case is causation, i.e., that plaintiff's protected speech was a substantial or motivating factor in defendants' decision to take adverse employment action against plaintiff. *Guster*, 2004 WL 1854181, at *9. When protected speech occurs very close in time to the adverse employment action, this constitutes "temporal proximity." *Montell v. Diversified Clinical Servs. Inc.*, 757 F.3d 497, 505 (6th Cir. 2014). "[T]emporal proximity between events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Id.* (citation omitted).

Here, defendants employed plaintiff for approximately four weeks before firing her. On her first day, she reported threats alleged in the complaint, and approximately one month later, defendants terminated plaintiff. This close temporal proximity is sufficient for plaintiff to satisfy her *prima facie* case. Furthermore, defendants have not challenged this element of the *prima facie* claim.

IV. **State-Law Claims**

Plaintiff asserts two state-law claims in her complaint: (1) a Tennessee Public Protection Act claim for retaliatory discharge, (2) a Tennessee common law claim for retaliatory discharge. Defendants argue that these claims should be dismissed and plaintiff does not respond to those arguments. In fact, plaintiff does not mention her state-law claims in her response brief. It is well established in the Sixth Circuit that failure to respond to an argument made in support of a Rule 12(b)(6) motion to dismiss a claim results in a forfeiture of the claim. *Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013); *see also* E.D. Tenn. L.R. 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought."). Consequently, plaintiff forfeited her state-law claims.

VII. **Conclusion**

For these reasons, the Court **GRANTS in part** and **DENIES in part** the motion to dismiss filed by defendants Knox County, Tennessee, Knox County Schools, and Tim Berry [Doc. 6]. Accordingly, the following claims in plaintiff's complaint are hereby

11

**DISMISSED**: (1) plaintiff's Tennessee Public Protection Act claim for retaliatory discharge, (2) plaintiff's Tennessee common law claim for retaliatory discharge.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE